Incorporated. Arguments not to exceed 15 minutes per side. Mr. Sellers, for the appellants. Have you reserved time? Yes, Your Honor. I'd ask for five minutes of rebuttal. Thank you. Proceed. Good morning. I'm here to speak on behalf of the   District Court. There are three reasons why the dismissal of the class claims below should be reversed. First, as this Court made clear in its veritrue decision, Andrews did not draw the bright line prohibition against American pipe tolling for former class members who bring successive subclass actions that led the District Court to have that application. The Shady Grove and Smith v. Baird decisions supersede any effect that decision may have to deny to the former members of the class the ability to pursue successive class claims. And third, Andrews turns on its head the American pipe tolling doctrine because it creates the very same incentive to file these protective claims, class claims, while the initial class case was pending, that American pipe tolling was intending to discourage. So there's no reason why there shouldn't be the same successive subclass claims as it would be to pursue separate individual claims. Can I ask there, how many of these regional, after the Supreme Court opinion, regional cases which were brought on the basis of a different, in terms of numerosity at least, a different class? There were five. And all of them reached the certification stage? No. Other than this one? No, your Honor. First, I want to be clear that each of these claims, including the one below here, differ from the original national case, not just in the scope, not just the... My question is what has happened to the other regional cases? I understand what your position is on that, but what I'm asking is what has happened in connection with the other regional cases? The California case, they proceeded actually to a class certification hearing. Class certification was denied. That case is over. Well, it's not an appeal from the denial of class certification, but that case did proceed to a second class certification ruling. There was another case in Texas, in the Northern District of Texas, where the district court dismissed the class claims, relying on a similar case to Andrews, the Salazar-Calderon decision from the Fifth Circuit. Did it reach the certification stage? It did not. It did not. There was a case in Miami, where likewise the district court dismissed the class claims, relying on believing it was bound by the Griffin versus Singletary decision. That case also has not proceeded to class certification. And then there's a case in Wisconsin, where the district court actually ruled that the American pipe tolling was available to pursue successive class claims, based on Seventh Circuit authority, but found that the way that class claims were pled in the complaint made it unlikely it would ever be certified, and therefore dismissed the class claims. And there the claims are proceeding individually. And then we have this case. It was two to two on certification so far. Well, two cases have said don't certify, and two have said something concerning the tolling problem. That's correct, but recognizing that the Supreme Court made the observation that there very well may be regional differences between, in these regions, which is one of the reasons it gave for reversing certification. An inference is hard to draw that if there's certification or denied in one place, that it would necessarily be denied anywhere else. All we're seeking to do at this point, of course, is to have the opportunity to go back before Judge Trauger and develop the evidence and make a case for class certification. We want to get to that stage. We want to be able to have that opportunity. We've been stopped at the initial stage because Walmart argued that we don't even get American pipe tolling, and therefore all these claims are untimely. And how do you think Vertrue changes? Well, Vertrue, I think, is important in this respect. Before Vertrue, and certainly at the time that Judge Trauger issued her decision, she didn't have the benefit of this Court's decision in Vertrue. And she wrote that she believed that Andrews established a bright-line rule prohibiting the availability of American pipe tolling in successive subclass cases. Vertrue recognized that in fact this Court expressly stated that Andrews did not set a bright-line rule. I think it used that adjudication on the merits of the class claims previously, the claims that had been dismissed, and therefore there had been no, the Court had not reached class certification. American pipe tolling should continue to be available. We contend here that while there was, this report obviously reached the issue of class certification, it did so on claims that are and that therefore there has been no determination, just in Vertrue, on the susceptibility of these claims to certification. And in that respect, Vertrue would support the availability of American pipe tolling here. And does the case in California actually go off on American pipe tolling or does it go off on analyzing this under claim preclusion? The California case actually, Judge Stranch, has actually approached it entirely differently because there it was a continuation of the original case. Dukes v. Walmart was the case that had been pending there. Because it is pending in that Court, then that class definition may be redefined by the Court and continue. That's correct. The Court said we don't have to address the question that we are addressing here because it's a continuation of the same class, albeit more narrowly defined, and it said therefore those issues are for some other Court to address. And Lattic and the Seventh Circuit have addressed somewhat encapsulated this as more a claim preclusion issue and less a tolling question? Yes, actually I think that the Lattic Court relying on the Atlas v. Sawyer decision of Judge Easterbrook's opinion, which I think is instructive here, concluded that once a claim, if the claim is timely individually, then you may be permitted to pursue it collectively. The determination doesn't turn on whether you can pursue the claims collectively or not. And it cites the preclusion issue because there is no other argument, and I think inherent in the Andrews decision, is something of a preclusion type reasoning, which is that if you are a member of a failed class, you can't seek to re-litigate class certification a second time and benefit from merkin pipe tolling. That seems to be the logic of the Andrews decision. The Seventh Circuit relying on the Atlas v. Sawyer decision concluded that once, as I said, you can't be precluded from pursuing a subsequent class claim simply because you are a member of a failed class, you are having adequate notice to the defendant as the underlying policy, but still be distinct so that it's not an issue preclusion case. So first of all, I do think, I'm happy to address your question, I think Judge Trauger addresses this very well in her opinion. The grabment of our claim is still sex discrimination and pay and promotions at Walmart. That's the claim that was the crux of the national case, which obviously included the claims pending in Tennessee. That is the claim on which Walmart was put on notice, has been put on notice since 2001, and therefore has had ample opportunity to preserve the evidence. Indeed, for seven of those years, the class was certified, so it wasn't just a question of whether we were speculating about certification. There was a national class certified and affirmed twice by the Court of Appeals. What's different here is that because the Supreme Court articulated new standards for certification and held that the evidence in the record was insufficient to satisfy the requirements for certification for a national class, the class here has pled and framed differently, still challenging sex discrimination and pay and promotions, but it's based on challenges to a discrete region. The company has a number of different regions. This focuses on a single region, the decision makers in this region, on particular practices that have been identified, on much more refined statistical analysis. I want to be clear that everybody agrees or doesn't agree that the Supreme Court opinion in Duke's case was the dismissal of the class action was because Rule 23A.2 failed. That is, that there were not questions, one or more questions of law or fact common to the class. That is correct, Judge Merrick. That was the entire holding that led to this conclusion by the Supreme Court. To be fair, there were two holdings. One, the only portion of Rule 23A that the Supreme Court addressed was commonality. You are correct. The Court also concluded that it had been improper to certify the class under Rule 23B.2 and if it were going to be certified, it should be certified under Rule 23B.3. That doesn't seem to be an issue here. But the only aspect of Rule 23A that the Supreme Court addressed was commonality. I see that my time has run up. I'll reserve the rest for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. I'm Theodore J. Boutrous, Jr., representing Walmart. I'd like to begin by addressing the equity and fairness issues in the case because I know in a case like this, that's something the Court is thinking about. We're talking about equitable tolling from American Pipe. And to put it in context, when the lawsuit, the Dukes case was filed in 2001, that tolled the statute of limitations for millions of individuals around the country. And up until the Dukes decision in the Supreme Court in 2011. So for almost 10 years, there was equitable tolling. It suspended the statute of limitations for all those individuals who were part of that class. Once the Dukes decision came down in 2011, everybody knew that the clock began to tick for the individual claims and the individuals. And class counsel, Mr. Sellers, in the website that they had, told the class members that they needed to act individually to preserve their claims. It's very clear under American Pipe and Crown Court that that's true. They went to Judge Breyer, who was presiding over the Dukes case, and asked for an extension of equitable tolling to allow individuals to preserve their rights under American Pipe and Crown Court. And Judge Breyer extended the deadline to May 25, 2012. And did so, in his words, in the interest of justice to ensure there was no confusion for class members in terms of what they needed to do and when they needed to do it, by filing an EEOC charge by that date. So everyone knew what needed to happen, and there was a fair mechanism set up. And Walmart didn't oppose that. We wanted to make sure individuals had a chance to assert their claims. Have regional cases been filed by that time when Judge Breyer in California made that ruling? They had not, Your Honor. And he made that ruling very soon after the Supreme Court's decision. That's one of my questions. I'm looking at your chart. Thank you, Your Honor. And you've got what Judge Breyer did in granting this extension to 5-25-12. And what he ordered for that extension was that the class members who have never filed before shall file charges with the EEOC by May 25, 2012. And then you've got your time-barred red line and you say, well, the Phipps case was filed on 10-2-12, so it's time-barred. I don't understand that, because 5-25-12 was the deadline to file with the EEOC. Phipps filed with the EEOC before that deadline. Once you file a claim with the EEOC, then it is within the jurisdiction of the EEOC to process. They processed her claim. They issued a right-to-sue letter on 9-13-12. Now, clearly that's beyond the 5-25 deadline, but the deadline was only for filing with the EEOC. And the EEOC says you have 90 days from your receipt of a right-to-sue letter to sue. And Ms. Phipps filed within that 90-day period, which is granted jurisdiction pursuant to the Title VII statute. How can she be time-barred? She isn't, Your Honor. Ms. Phipps, we agree. Ms. Phipps and Ms. Gibbons and Ms. Milner, the named plaintiffs, their claims are timely. What happened was, though, that the individuals they seek to bring into the class, the absent class members did not file claims by May 25, 2012. So their claims are time-barred. But she filed as an appropriately time-told individual on behalf of a class, all of whom Wal-Mart knew had been in the initial class action. So I'm looking at American Piping. You have two issues. You have fairness to defendants. Are they on notice? Did they collect evidence? Do they know what the charges are, what the claims are? The other side of that is judicial efficiency. And here you have a plaintiff who is not time-barred, merely bringing a representative action on behalf of the individuals that Wal-Mart already knew had been involved in the claim that was being made. Why can she not bring that in a representative capacity? A couple of reasons, Your Honor. First, under American Pipe, once the class was denied, and under this Court's decision in Andrews, to preserve their individual claims that had been suspended for 10 years, before the statute of limitations expired, individuals must take the action to preserve their own rights. But that begs the question. The question is, who may they bring the class action on behalf of? We start with American Piping. Oh, in American Piping, it's only interveners. Then the Court comes back in Crown Court and says, no, it's also plaintiffs. So now the question becomes, in light of Shady Grove and the Supreme Court's teaching about the right to act in a representative capacity, do we not now have the ability of a timely filed representative plaintiff for whom the defendant has notice of the claims? Does that person not have a right to bring a representative action? That person does not have a right to bring a representative action for individuals who are absent from the court, who did not themselves take action to preserve the timeliness of their claims, as Judge Breyer ordered. Even though the way a class action always works is that one person acts on behalf of absent class members and protects their rights, and those absent class members do not themselves file. I mean, isn't that the nature of a class action? It is, Your Honor. And the Andrews case, which binds this panel, which binds this court, which Judge Trauger found directly applied here, which plaintiffs agreed, if it applies, and we believe it does, means that the first class action, there's tolling. The second class action, the tolling does not carry over to assertions on behalf of absent individuals in a class action based on the same claim. These are the same claims. And whether in the follow-on action it is the same claim as the first or not, if it's a different, I'm a little confused, but if it's a different claim, but you've got class members who were prevented from filing separately a class action, but don't we have to make a determination about what's tolled and what isn't tolled and what is possible based upon whether it's the same or a different claim? Yes, Your Honor, to a certain extent. First, if it's a different claim, there was never any tolling to begin with. Unless this is the same claim that was in Duke's, the Duke's case did not toll the claims of the individual class members, and the entire case is time-barred, including Ms. Phipps' claims. But if it's the same claim, the Supreme Court has already decided the results there on certification. Now, in this case, we've not gotten to the question of certification. Shouldn't the district court need to get to the question of certification before it can determine whether this is the same claim, different claim, and how it should be handled if it's a different claim? No, Your Honor. Judge Trauger correctly concluded that the broad outlines, the theory, is exactly the same in this case. We have a chart, another chart, Your Honor, in our brief that we cite comparing the allegations. It's just a geographically smaller claim. It's the same policies. It's the same practices. It's just like the Andrews case that this court decided in 1988 and said— The position of your opposing counsel is that it is not exactly the same claim, that the gravamen, very simply, it is gender discrimination, is the same, but that the underlying bases of the claim is different because what the Supreme Court said in Dukes is, I'm looking at this national activity by Walmart, and there is just not enough commonality in what these national rules are. And I think that case even hinted a little bit that that's because there are regional differences. Not really, Your Honor. Well, there are regional differences referenced in the Supreme Court case. And so now the claim is that this is not a claims preclusion type of issue because even though we are also gender discrimination, the claim is that you have different policies and procedures within this particular region, and it is those policies and procedures that are discriminatory. And let me just finish the question. Sure. What I'm struggling with is Andrews was exactly the same claim. Andrews was the PACE test discriminates racially. And the first case, then the Brown case, then the fallout from the Brown case that led you down to Andrews was all based on the very same claim, the PACE test, period, with a smaller group except for in Andrews it ended up that the settled group was exactly the same as the third class. So how, when your allegation is that we are relying on a different set of policies and procedures and different activities that are what cause the gender discrimination, how is that not distinct and wouldn't that not be precluded under a claims preclusion argument? First, Your Honor, it's exactly like the Andrews case. This is the same policies. Regions don't have different policies. We've documented this, and they don't argue it. It's the same policies in terms of pay and promotion that were at issue in the Supreme Court. They're arguing that maybe they were applied differently on a regional basis. That's exactly what Andrews was. The argument was that in the first class action there was no commonality because they were arguing about a test applied in different areas, in different regions. The court said that there were differences argued about how they were applied, so the new class was limited to one Air Force base. That's exactly this circumstance. Secondly, the Supreme Court- Exactly one Air Force base, same test. But these are the same policies, Your Honor. Mr. Sellers cannot stand up and tell you that he's not talking about the same policies, exact same policies that were at issue in the Dukes case. The company had a national policy regarding pay and promotion, and they're arguing, well, let's look at a regional basis in a smaller group. They're not arguing there were special policies in this region, and that's a very important point. That's a good question. We'll have to ask him. Yes, ask him. I dare him to say something differently after all these years. Then if we should remand to the district court, the district court would have to dismiss the case at the certification stage of the case, right? Definitely, just like Judge Breyer did in the Dukes case itself. After, you were asking about what happened in the Dukes case. It wasn't a claim preclusion issue. Judge Breyer allowed Mr. Sellers and his team to put on a full-blown evidence, and they were unable to show disparities at different- pay disparities or promotion disparities with any commonality, with any statistical significance, and he called it, the person most familiar with the case, the same arguments with new labels. Let me ask you this. Class action, Rule 23 is difficult. The whole concept here is often difficult, but in 23C1, under Certification C1A, it says time to issue. At an early practicable time, after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action. I think- In order to determine what kind of case this is to be considered, we've got to get to certification somehow. No, Your Honor, we don't think so. This is really- What do you do with this language, must determine? Put aside Rule 23. Rule 12 allows a defendant to move to dismiss when the claims of the parties are not timely. Here, the absent class member- Forget about Rule 23. How can we forget it? I love Rule 23. I'm sorry, Your Honor. I don't think we can forget about it. The Supreme Court decided Dukes on the basis of Rule 23, I guess, A2. But we have not gotten, in this case, to the certification process. I don't see how we can say what the claim is exactly without doing that. Your Honor, I think it's very straightforward. Here, the named plaintiffs who have timely claims are asking the court to revive claims that have expired. And Title VII has a very short statute of limitations to encourage speedy resolution. These claims are 14 years old. They were told for 10 years. The problem, Counselor, is that all of these women, 1.5 million women, have been waiting for eight years for an adjudication on the merits. All that time, they thought they were represented in a class action that would take their claim to the merits. Now that the time has run for them to do anything else, they're told, No, you don't have a class action. And I'm struggling with how you can retroactively deprive them of the opportunity of hearing merits. You may be right on the merits. You may win on the class certification. But that's not what you're here asking for. You're here asking for a bright-line rule that says once you've had any adjudication on any class action, there can never be a second one. Am I wrong? No, that's not what we're arguing right now. We're saying that the second class action can only include timely claims. But you're saying that they can only include claims that were individually filed by those women, right? Or actions were taken to preserve the timeliness. And just to question the premise of your question, Your Honor, this wasn't where women were told to wait and then suddenly their rights were taken away. As I started at the outset, this process was created where class counsel, Judge Breyer, everyone knew the simple process of an EEOC charge, which is an informal process and meant to allow speedy resolution. So these rights weren't taken away. Everyone was told in the most widely publicized class action in history, file your EEOC charge. Ms. Phipps could have filed the claim here, a class action that included individuals who had made timely charges. So this is a fair process. Here's what I'm trying to do. I'm looking at the two policies that American Pipe created. Fair notice to the defendants, which you've gotten on this gender discrimination claim because you say it's exactly the same claim, so you're on notice. The other side and the very important thing that American Pipe decided was judicial efficiency. So what you're saying to me is you want an order from this court that will tell a district court that if a class of 1. million women is decertified, you district courts can expect to get claims filed or need to get claims filed from 1.5 million women in order for them to have any right to proceed. No, Your Honor. And how can, how, if they have to do something individually, is that not going to require them to do something before the court? Well, at some point, Your Honor, the Supreme Court decided that the 1.6 million women had nothing in common other than their gender in a lawsuit. Once the class was decertified, under American Pipe and Andrews, they were required to take the action to preserve their claims. And many did, 2,000 nationwide, according to Plaintiff 63 in this region. So there's not some flood of claims. And to us, yes, Judge Cook? Yes, Mr. Buttress. How long did, there was notice sent out for the extended time to each individual to preserve their claim. How much time did individuals have from the time they got their notice until the cessation of their rights to bring their EEOC matter? Nearly a year, Your Honor, from the date of Judge Breyer's order and class counsel's notice. So there was nearly a year as long, and Judge Breyer rolled the clock back, so it wasn't just where, how much time was left on the clock. It's not the time that I'm interested in. It's the judicial efficiency.  Because, yeah, I would like that. Judicial efficiency, this is the most inefficient use of the class action procedure in world history. It's been pending for 14 years. They're making the exact same arguments the U.S. Supreme Court rejected. And I know it's hard to say be fair to a big company. Walmart litigated this case for 10 years and prevailed in the Supreme Court on the exact issue that it was, they're now making again. Now they want to stack the statute of limitations tolling again upon the 10-year tolling and hold everybody, and it's not good for plaintiffs to have some uncertain rule. Individuals need to know, go protect your rights. Keeping them in, it's not efficient. Yeah, if your rule applies and you're sitting as a plaintiff in a gender discrimination claim and you're in a class and the statute of limitations is nearing and you don't have, you have a class certified, but it's on appeal, what do you have to do to protect your rights? Nothing until the class is decertified. And it's not my rule, Your Honor. It's this court's rule in Andrews. To rule against us, to reverse, you will have to reject your fellow panelists in Andrews. I want to understand exactly what you have to do. Yes. So you do nothing and then there is a decertification order. And then what does every individual in that class have to do? As Justice Stewart said in American Pipe and then with the Supreme Court and in Crown Court, then either intervene, hear, file an EEOC charge, call the EEOC, use the forms provided by class counsel, And then file. And submit to the EEOC under Title VII, which is meant to allow quick resolution of individual claims. Efficient resolution. I don't think a 14-year process where everybody is held in limbo and no one is getting any relief is good for plaintiffs or Walmart or the judicial system. So the policies of Title VII, including the statute of limitations, and the Supreme Court in the Gabelli case and the Lozano case, as you look at the policies in the statute on tolling too, or class actions, class action efficiency has been thrown out the window in this case because of the overreaching claims that have been made. And the tolling process has been entirely fair to the individuals in the lawsuit. People went out and did their EEOC charges. I don't remember. In Judge Lively's opinion and Andrew's, was there any sustainable discussion of equitable doctrine of tolling? When you got up here, you said, yes, this is an equitable question. Tolling is an equitable doctrine. But I can't remember whether there was any discussion in Andrew's opinion about the equitable nature of tolling and so on, but I can't. Was there any? Andrew's discussed American pipe and the unanimous agreement of other circuits. Equitable tolling, is that mentioned specifically and analyzed what equitable tolling means in Andrew's or not? Andrew's talked about equitable tolling with respect to, I think, individuals, but the American pipe doctrine is a form of equitable tolling. There is no other form of tolling. Courts have the equitable power, to be fair, to suspend the running of a statute of limitations before it expires to achieve other objectives like efficiency. That's American pipe tolling. But maybe I'll finish with this because my light has been red for a while. I'm sorry. I'll let you hold your finger because I have one more question that I'm trying to understand. The way Dukes, the 2012 decision by Judge Breyer in Dukes, allowed the case to reach the commonality question and it did it because it was the court overseeing the class action and it was able then to alter the class definition, which is standard under Rule 23. So my question to you is if there is a class action filed anywhere in the nation that extends across the nation and there is, after the time period has run, there is a reversal of a grant, for example, then aren't we going to end up with the rights of individuals depending on where they live? Because if you live in the jurisdiction where the case was originally filed, then the class definition may be altered by the judge. And that one goes on as a class action. But if you happen to live in Tennessee, in this case, because you're not in the jurisdiction that initially had the class action, you're out of luck. Well, Title VII, Your Honor, has venue-specific provisions that are based on jurisdiction. So venue is important in these cases. You don't dispute that it's a difference. If you're in the jurisdiction where the class was originally filed, your case may go forward in a representative capacity. No, Your Honor. We actually disagreed respectfully with Judge Breyer on that point. That's what he held. That's what he held. That's what he held. So you go forward. In our particular situation, the people, the women in California, got to go forward in a representative capacity, but the women in Tennessee don't. They did not in California because Judge Breyer held that there was no commonality. No, they got to try to go forward. That's fair. They got to try, but they didn't win. The named plaintiffs got to try. In a representative capacity. But in the state of Tennessee, the woman who is an appropriately filed person may not act in a representative capacity. You've helped me get to a point I really wanted to get to because it's a premise of the arguments on the other side, that a named plaintiff has, and absent class members, have a right to a class proceeding, a separate right, as opposed to just bringing their individual claims. There's a little recent Supreme Court jurisprudence that would suggest that's true. That it's not true. Your Honor, the Italian Colors case, the Supreme Court said, there is no entitlement to proceed as a class. It's a procedural mechanism that's meant for efficiency purposes to gather individual claims together and adjudicate them. What about Shady Grove and its companion? May I just briefly? Smith. Smith and Shady Grove. Again, they do not in any way undermine, in the least, this Court's decision in Andrews. Shady Grove said that when you're in federal court, Rule 23 applies to determine whether a class should be certified, as opposed to state court rules. That's not the issue in this case. Shady Grove did not mention tolling. And Shady Grove said substance still matters. So under Shady Grove in Rule 23, you could never certify a class where the named plaintiff's claim is timely and the unnamed plaintiff, the absent class member's claims aren't timely. Shady Grove supports us. Judge Merritt's point, Rule 23 is Rule 23. It's an important rule. And that's all Shady Grove says. With respect to Smith, Smith says issue preclusion doesn't bar unnamed individuals who weren't parties. We agree with that. Smith includes a footnote 10 on tolling that says once the class is decertified, individuals may go forward and file their own suits. So Smith supports us. That's where Laddick and the Seventh Circuit comes in and says, this is not an American tolling issue. This is an issue preclusion. Sawyer, Judge Easterbrook, got it wrong. He predicted that Smith, which was pending at the time, would find issue preclusion. I think he thought they would. So he found there was an issue preclusion that would bar an absent class member from a subsequent class. Smith ruled the opposite way. So Sawyer is not good law, but the result there would support our position. This area is so confusing. The courts have had so much difficulty trying to have a rational system of class actions, and it's by nature very difficult to do it in a way that's not completely confusing. We thank you for your argument. We have asked long beyond your time. Much appreciated. Thank you. Your Honor, I do have a few points in rebuttal. First of all, I want to be clear what notice was provided and what wasn't provided. We put out on our website what we thought was responsible to advise women who happened to look at it, that given the Supreme Court's ruling, if they wish to proceed, they ought to bring their claims. Virtually every one of them filed charges alleging a pattern of practice of discrimination when they filed charges with the EOC. So there was no formal notice of the sort that perhaps Rule 20, if you think of notice in the form that Mr. Boutros is referring to, Rule 23E notice, there was no such notice. This wasn't an announcement to the world, go file your claims. The best we could do, because we didn't have a formal notice provision, is to put something on a website, and Mr. Boutros keeps referring it to as notice. It was notice to make sure women who are not knowledgeable about the law understood what happened. And there had never been a class notice sent? Absolutely, because the ruling on class certification was up on appeal before Rule 23 notice ever was issued to begin with. So there was a lot of confusion. It was certified, it was upheld by the Court of Appeals, Supreme Court reversed. We were just trying to make some clarity so that women who wanted to proceed could do so. And as I said, the 2,000-plus women who filed charges around the country, about 100 of whom filed within the Tennessee region, all alleged pattern of practice claims. They all sought to challenge with respect to the regions where they brought their claims, not nationally. So I think that's. . . How does this work in the judicial efficiency argument? It just appears to me that that is. . . I understand that Justice Powell filed a concurrence that said there's a danger of abuse here. But the majority said judicial efficiency is the deal that we're concerned about. The consequence here of Andrews being allowed to stand in this case is it will lead people in the future when there's a class case pending and they're absent members of the proposed class. And if it's a Title VII case and 180 days are coming up and most class certifications and decisions are not made in the 180 days, they're going to have to think about whether they need to file their own separate action alleging a pattern of practice of discrimination just to be sure they don't lose American pipe tolling in the event certification denied or it's granted and 10 years later there's multiple appellate review. We will have the very multiplicity of cases filed that American pipe tolling, Crown Cork were intending to foreclose. So the protective filings would have to go in the jurisdiction that the individual lived? Right. So if a national case is brought in Tennessee and I'm in Wisconsin, I'll have to file my national case in Wisconsin and somebody else will have to file in Miami and somebody else will have to file in Florida. It's not just a matter of filing these national cases or these regional pattern practice cases, but I'll have to file them all over the country. One single national case could spawn a whole host of subsidiary class cases before that. And that would be the only way to retain the ability to move forward as a class? Under the Andrews, under the way that Walmart would like this court to interpret the Andrews decision, that's correct. Let me address also a question which I think you wanted me to address, which has to do with what do we know about the claims? Mr. Gutros made this assertion that the policies at issue here are the same throughout the country, which of course is quite interesting because they argued strenuously to the Supreme Court otherwise. We don't know frankly what the policies are in Tennessee. We haven't done discovery here. The discovery in the national case was focused on the extent of any national policies. Our evidence obviously didn't persuade the Supreme Court to uphold commonality, even though it did the lower courts. So we are simply seeking the opportunity to come back to the district court, conduct the discovery that we were allowed to conduct in California to see. I can tell you the informal information provided by our clients is there are some variations in the way that some of these policies were administered in Tennessee from California. The Supreme Court, you are correct in your recollection, Judge Strange, the Supreme Court said there are regional variations. It was one of the reasons it cited for why a national case couldn't be sustained. Didn't say what they are. Didn't say what they are. Anything that would be helpful about that. Well, we didn't really know at the time because none of us had done regional discovery. What they were looking at I think was there were variations by region in the statistical evidence. Quickly, your complaint in this case, I can't prove that it alleges any common question in the way the Supreme Court is interpreting it. I can't prove it alleges any common question that's any different from what was alleged in Duke's case that the Supreme Court reviewed. Well. So, you know, you can go back down to the district court and decide, have a decision after discovery on the question of commonality, but how are you going to overcome that problem? Right. Well, as I said before, Judge Merritt, we haven't had discovery. So when we filed our complaint, we named the same type of practices that were being challenged. We supplied some additional evidence, more refined statistical evidence, to show disparities at the regional level rather than nationally. We're not suggesting that we're challenging, we're not challenging the pay practices or the promotion practices. The Supreme Court made clear, and I think Judge Breyer got it right in this respect, that what we had was a failure of the evidence to support a finding of commonality. It was not a finding that we could never show these kinds of practices were common. It was the evidence we supplied failed. The problem you've got is that what specific principle or rule of sex discrimination are you claiming is common? I understand. The Supreme Court has said just having discretion, which has led to, in some cases, unstated, just having discretion, which has led to some sex discrimination, is not a sufficient common question. Correct. And what we did here was allege something much more specific. We allege the way that the pay and promotion practices operated. We learned, for instance, in California whether we're going to find it here. Yeah, but just alleging how they operate doesn't create a principle of conduct that is illegal. But what we are challenging are the factors that the company provides to the managers to guide their discretion in determining the pay and promotion decisions. Now, whether those factors are the same in Tennessee as they were in California or elsewhere, we don't know. What we do know is that challenging, I can tell you, the McReynolds decision from the Seventh Circuit makes clear, for instance, on class certification, not on you asking a question going to whether we could ultimately get a class certified, that challenging discrete factors that you can have a practice that has discretion and it's challenged and susceptible to class certification. McReynolds in the Seventh Circuit makes that clear. What factor is illegal in this case that you would like to? Well, what we're looking at here is the discretion they provided the managers on things like the credit that's given for determining certain kinds of, assessing certain kinds of experience in making promotion decisions. What factor, counsel, that is so abstract. My mind can't really encompass it. I've got to have something specific. What factor is it that's illegal? Your Honor, I don't, I didn't identify. I don't know. I don't know in Tennessee. I haven't been given the discovery. You asked before the question of whether we can have that opportunity. I can't name the particular factors without doing some discovery. I was only able to name factors in California when we did the discovery. We never had the regional discovery to be able to name that. Now, we have identified. You don't know whether there is a factor or not since you haven't had the opportunity to look into it. I believe there are based on what our clients have told us. But I can't tell you because we haven't done the kind of discovery. I think we'd be asked to be alleging practices that would ordinarily depend on discovery before we have the discovery. What you're looking for here is the opportunity to try to do that. Yes. And is your best argument under, is it under virtue or are you also suggesting that we might need to look at it as outside American tolling in its entirety and treat it more like Laddick did or more like Sawyer did as an issue preclusion question? Your Honor, I think there are several options we've provided you. I think the simplest and most straightforward is to follow the Veritru model. Recognize, as Veritru did, that there are certain exceptions to Andrews where you're not seeking to adjudicate the same type of class claims that were presented before. It doesn't create the problem that Andrews was addressing. And as a result, we can proceed with American pipe tolling here because this was a significant change of law that led to a significant change in the way the class claims were framed. The preclusion is another option, but I think Veritru is a much simpler approach. Okay. We thank you both. Thank you. Good argument.